STATE OF INDIANA, EX REL. O'BRIEN, AUDITOR OF STATE, *v.* CONTINENTAL INSURANCE COMPANY OF NEW YORK.

[No. 9,580. Filed June 29, 1917. Rehearing denied December 7, 1917. Transfer denied May 2, 1918.]

1. TAXATION.—*Receipts of Foreign Insurance Companies.—Statute.—Construction.*—Under §10216 Burns 1914, Acts 1891 p. 199, §67, requiring insurance companies not organized under the laws of Indiana and doing business therein to report for taxation semi-annually the gross amount of all receipts received in the state on account of insurance premiums for the six months last preceding, less losses actually paid within the state, an insurance company had the right in determining the amount of premium income subject to taxation to deduct from its book entries of gross premiums the amount of premiums represented by "flat"

State, ex rel. *v.* Continental Ins. Co.—67 Ind. App. 536.

cancellations of policies for which no premiums had been received, since the statute required it to pay taxes only on premiums received and retained. pp. 548, 556.

2. STATUTE.—*Construction.—Legislative Intent.*—On construing a statute the court is required to discover, if possible, the legislative intention in the enactment of the particular statute under consideration. p. 548.

3. INSURANCE.—*Foreign Insurance Companies.—Exclusion from State.—Powers of Legislature.*—The legislature has the constitutional power to exclude foreign insurance companies from the state. p. 549.

4. TAXATION.—*Taxation and Regulation of Foreign Insurance Companies.—Police Power.—Statute.—Construction.*—Section 4790 *et seq.* Burns 1914, §3765 R. S. 1881, regulating the business of foreign insurance companies in this state and §10216 Burns 1914, Acts 1891 p. 199, §67, imposing a tax upon the gross premium receipts of such companies, emanate from the police power of the state, and, being interrelated, should be construed together. p. 549.

5. INSURANCE.—*Foreign Insurance Companies.—Privilege Tax.—Statute.*—Section 10216 Burns 1914, Acts 1891 p. 199, §67, requiring foreign insurance companies doing business in this state to pay taxes upon their gross premium income, imposes a tax upon a foreign corporation for the privilege of exercising its corporate franchises and carrying on a business in a corporate capacity within the state, and such tax is a graduated privilege tax. p. 550.

6. STATUTE.—*Construction.—Imposition of Special Tax.*—Statutes imposing a special tax on corporations are within the rule that a statute providing for the imposition of taxes shall be strictly construed and that all reasonable doubts in respect thereto shall be resolved against the government and in favor of the citizen. p. 556.

7. TAXATION.—*Foreign Insurance Companies.—Reinsurance.—Statute.*—Under §10216 Burns 1914, Acts 1891 p. 199, §67, imposing a tax on the gross premium receipts of foreign insurance companies doing business in this state, a foreign fire insurance company is not required to pay taxes on reinsurance premiums received from other companies on account of risks located in Indiana where the business is transacted in another state. p. 557.

8. INSURANCE.—*Foreign Insurance Companies.—Taxation.—Rate.—Retaliatory Statute.—Enforcement.*—Under §7222 Burns 1914, Acts 1895 p. 319, providing that the auditor of state shall tax for the use of the State of Indiana, the fees, taxes and charges allowed by law, etc., and §4086 Burns 1914, §3773 R. S. 1881, providing that where by the laws of any other state any taxes, fees, etc., or other obligations, are imposed upon insurance com-

panies of this or other states, or their agents, greater than are required by the laws of this state, then the same obligations and provisions shall in like manner be imposed upon all insurance companies of such states and their agents, and §10216 Burns 1914, Acts 1891 p. 199, §67, the primary taxing statute, fixing a rate of two per cent. on the premiums received by foreign insurance companies doing business within the state, if the auditor of state should have before him the fact that the State of New York levies a lower rate on Indiana companies doing business in New York, he is not required by the retaliatory statute to make a corresponding reduction, but in that event he must adhere to the primary law, and it is only upon the happening of the contingency that the taxes imposed upon the insurance companies of Indiana or other states by the New York laws are greater than are required by the laws of this state that the retaliatory statute may be invoked. p. 561.

9. STATUTE.—*Retaliatory Statute.—Construction.—Enforcement.*— Section 4806 Burns 1914, §3773 R. S. 1881, being penal in its nature and involving the comity of states, must be strictly construed and executed with care. p. 562.

10. INSURANCE.—*Foreign Insurance Companies.—Taxation.—Retaliatory Statute.*—Under §4806 Burns 1914, §3773 R. S. 1881, providing that where by the laws of any other state any taxes, fees, etc., are imposed upon insurance companies of this or other states, or their agents, greater than required by the laws of this state, then the same shall be imposed upon all insurance companies of such states and their agents, a tax law of New York requiring the payment of net premiums to the fire department of cities and incorporated villages by fire insurance companies not organized under the laws of the State of New York, but doing business therein, would not be applicable, since premiums derived from insurance on farm property and on property in towns and villages not having fire companies, are taxed at the rate of two per cent.; the obligation to pay this tax is laid upon the local agent and not upon the company and the agent is liable to forfeiture for failure to discharge the obligation and the funds derived from the tax belonging to the municipality where collected and must be used for the benefit of its fire company or companies. p. 563.

From Marion Superior Court (90,589); *Charles J. Orbison,* Judge.

Action by the State of Indiana, on the relation of William H. O'Brien, auditor of state, against the Con-

tinental Insurance Company of New York. From a judgment for defendant, the relator appeals. *Affirmed.*

*R. M. Milburn* and *Ele Stansbury,* Attorney-General, *Horace M. Kean, George Shirts, Omar O'Horrow* and *U. S. Lesh,* for appellant.
*William L. Taylor* and *Thomas Bates,* for appellee.

DAUSMAN, J.—This action was brought by the State of Indiana on the relation of the auditor of state against the Continental Insurance Company of New York to recover taxes alleged to be due and unpaid for the years from 1876 to 1911, inclusive.

In the first paragraph of complaint it is alleged that the Continental Insurance Company of New York is a foreign fire insurance company organized under the laws of the State of New York; that during said period of time it was engaged in the business of writing fire insurance, collecting premiums, and paying losses within the State of Indiana; that it was the duty of said company during said years, in the months of January and July of each year, to report to the auditor of state of the State of Indiana for the purposes of taxation the gross amount of all receipts received on account of premiums for insurance written on property in the State of Indiana for the six months last preceding, and at said times to pay into the treasury of the State of Indiana the sum of $3 on every $100 of gross receipts less losses actually paid within the state; that the total amount reported as gross receipts derived from insurance written in Indiana by the company during said period is $8,430,-419.98; that the total amount of losses paid in Indiana during said period is $4,117,332.36; that the

amounts so reported by the company as gross receipts were not the correct amounts, but that it actually received in Indiana during said period premiums amounting to the sum of $9,007,410.93; that, after deducting from the correct amount of gross receipts the losses paid as aforesaid, the balance on which the taxes should have been paid is the sum of $4,830,-078.56; that the correct amount of taxes which should have been paid during said period is $144,902.36; and that the taxes actually paid amount to $128,783.78, leaving a balance due the State of Indiana in the sum of $16,118.58, for which judgment is demanded.

This paragraph is based on §10216 Burns 1914, Acts 1891 p. 199, §67. Said section was enacted originally in 1873 and constituted §§8 and 9 of an act supplementary and amendatory of the general tax law of 1872. (Acts 1873 pp. 205, 208.) It was re-enacted as §83 of the general tax law of 1881. (Acts 1881 p. 611, §6351 R. S. 1881.) It was again re-enacted in 1891. (Acts 1891 p. 199, *supra.*) It has constituted a part of the statute law of this state continuously since 1873.

In the second paragraph of complaint it is alleged in substance that during all and each of the years from 1876 to 1911, inclusive, while said company was carrying on its business in the State of Indiana, the laws of the State of New York, in which said company had its home office, imposed a tax of two per cent. upon the gross premiums received on account of property insured in the State of New York by fire insurance companies not organized under the laws of the State of New York; that two per cent. of the gross premiums received by said company in the State of Indiana during said period was greater than

three per cent. of said gross premiums less the losses actually paid; that the taxes which said company should have paid if computed at the rate of two per cent. on the gross premiums received by it on ac-- count of insurance written on property in the State of Indiana during said period amount to the sum of $180,148.04; that the amount of taxes said company should have paid during said period if computed at the rate of three per cent. on gross premiums less losses actually paid is the sum of $144,901.71; that the total amount of taxes actually paid by said company during said period is the sum of $128,783.78; that, when the sum actually paid as aforesaid is deducted from the larger sum for which the company is liable as alleged, there remains due the State of Indiana a balance of $51,364.26, for which judgment is demanded.

This paragraph is based on §4806 Burns 1914, being §3 of the act of 1877 (Acts 1877 p. 65), and commonly known as the retaliatory statute.

Underlying the complaint is the theory that it is the duty of the proper officers of the State of Indiana to collect taxes from foreign fire insurance companies doing business in this state, either under the three per cent. law or under the retaliatory law, depending upon which will produce the greater revenue.

The first paragraph of complaint the company answered by general denial only. To the second paragraph of complaint it addressed seven answers of the following purport: (1) General denial. (2) Payment of all taxes due before the commencement of the action. (3) That §3 of the act of 1877, *supra,* was repealed in 1891 in so far as it authorizes the collection of taxes from any foreign insurance company

doing business in this state. Acts 1891 p. 199, *supra.* (4) That the laws of the state of New York never imposed a tax of two per cent. on the gross amount of premiums received in that state by foreign fire insurance companies, but imposed on such companies a tax of two per cent. on the gross premiums received only in cities and towns having fire departments; that, if the New York law were applicable at all, it could only be applied to premiums collected by this company in cities and towns in Indiana having fire companies; and that it has paid more taxes under the three per cent. law than would be due under the two per cent. law on premiums collected in said cities and towns in this state. (5) That the State of Indiana is estopped by executive, legislative and departmental construction from enforcing the retaliatory statute. (6) Former adjudication. (7) That the laws of the State of New York do not provide a state tax on foreign fire insurance companies, but a municipal tax only, and that the retaliatory statute of this state is not applicable to New York companies.

To these affirmative answers the state filed a reply in denial.

At no time has there been any dispute concerning the correctness of the company's private account of the business done by it in this state. One of the items of evidence introduced by the state is a tabulated statement which shows by years the amount of "Gross Premiums" and the amount of "Returned Premiums." This statement was compiled from the company's books by accountants chosen by the state and who worked in conjunction with employes of the company. The parties agreed that this statement is correct. There is no dispute as to the amount of

losses paid by the company in this state. Indeed there is no dispute as to any other matter of fact.

The court made a special finding which is extensive, consisting of fifty-six items and covering forty pages of appellant's printed brief. No good purpose would be subserved by setting out the finding in full.

Upon the facts found the court stated the following conclusions of law, to wit:

"First. Under Section 10216 Burns R. S. 1914, requiring foreign insurance companies doing business in the State of Indiana to pay three dollars on every one hundred dollars of the gross amount of all receipts received by them in the State of Indiana on account of insurance premiums, less losses actually paid by them within the State, the defendant company is required to pay to the state three per cent. of the gross amount of premiums collected and retained by it upon all policies of insurance written upon property located within the state, and in the making of its semi-annual report and settlement with the auditor of state of the State of Indiana, under the provisions of said above noted section, the defendant had the right to deduct from the total amount of the gross premiums received by it upon insurance policies written upon property located in the state as shown by its books, all premiums returned to policyholders, all premiums on policies cancelled for failure on the part of the insured to pay the premiums, and all premiums charged on the books of the company where the policies of insurance were never delivered and never paid for by the insured.

"Second. The defendant company has fully complied with the provisions of Section 10216 Burns R. S. 1914, has fully paid the tax required of it under said

section, and is not indebted to the State of Indiana in any amount under and by virtue of said section.

"Third. The tax law of New York as pled in plaintiff's complaint, requiring the payment of certain premiums to the fire departments of cities and incorporated villages by fire insurance companies not organized under the laws of the State of New York but doing business therein, does not apply to the case at bar, and even if said law applied there is nothing due or owing by the defendant to the State of Indiana, because the amounts paid by the defendant to the state under and by virtue of Section 10216 Burns R. S. 1914, are in excess of the amounts that would have been paid by said company under and by virtue of said New York law.

"Fourth. The plaintiff is not entitled to recover from the defendant and defendant is entitled to its costs.

"And the plaintiff at the time excepted separately to each said first, second, third and fourth conclusions of law.

"Chas. J. Orbison,
"Judge of Marion Superior Court."

The alleged errors properly presented are that the court erred in each conclusion of law.

I. The substance of so much of the special finding as is necessary to an understanding of the issue on the first paragraph of complaint may be stated as follows: The Continental Insurance Company of New York is, and during the period stated in the complaint has been, a fire insurance company organized under the laws of the State of New York. At all times since its organization it has maintained its home office and principal place of business in the

State of New York. Since January 1, 1876, it has been doing business as a fire insurance company in the State of Indiana. During all said time it has been insuring property located in Indiana on account of fire, and part of the time on account of tornadoes. It has conducted its business through its agents, and the company and its agents during said period have been duly authorized to transact the business of fire insurance in the State of Indiana. During all said time the Company has maintained at the city of Chicago what is known and designated as its "Western Department." Its Western Department has had jurisdiction over all the business done by it in the State of Indiana, and in this department it has kept an agency register on which is a record of every policy written by the company in the State of Indiana. The company has required each of its agents in Indiana to make out and forward to its Western Department a report of each policy written and on the day written; and immediately upon receipt of the daily report at its Western Department a record was made thereof on said agency register and the amount of the premium stated in the policy was entered in a column under the heading "Gross Premiums."

Prior to the year 1911 the company allowed its agents sixty days, and since the year 1911, forty-five days, in which to collect premiums on policies written. Where a policy was rejected by the insured, or where the insured failed or refused to pay the premium, and the policy was surrendered to the agent, was treated as a canceled policy, was transmitted to the Western Department, and the premium stated in the policy was entered on the register in a column

under the heading "Returned Premiums," although no premium had been collected thereon. Where for any reason a policy was unsatisfactory to the insured and was exchanged by the insured for a new policy, the original policy was treated as a canceled policy, was transmitted to the Western Department, and the premium stated in the policy was entered on the register in the column under the heading "Returned Premiums," although no premium was ever collected thereon. These two groups of canceled policies are known as "flat cancellations" and the premiums represented by these two groups of policies constitute at least eighty per cent. of the total amount of the so-called returned premiums. Where the premium had actually been collected and the policy afterward canceled, whether at the instigation of the company or the insured, the policy was transmitted to the Western Department and the amount of premium actually refunded to the insured was entered on the register in the column under the heading "Returned Premiums."

In the month of July, 1876, and in the months of every succeeding January and July thereafter, including the month of January, 1912, the company has reported to the auditor of state of the State of Indiana, under oath of its president and secretary, for purposes of taxation, a statement of the gross amount of all premiums received on account of insurance written on property located in said state for the six months immediately preceding each report, the said tax periods ending on the last days of December and June of each year. These reports were made on blanks furnished by the said auditor. In making said reports the com-

pany deducted from the gross premiums entered on
its register the returned premiums entered on its reg-
ister and reported the balance as the amount of gross
premiums received.   At the time of making each of
said reports the company paid into the treasury of
the State of Indiana the sum of $3 on every $100 of
said gross premiums received, less the losses actually
paid the policy holders on property located within
the state.

The company did not write any reinsurance prior
to the year 1906.   Since that year it has received as
reinsurance premiums from other foreign fire insur-
ance companies authorized to do business in Indiana
for reinsurance on property located in Indiana the
sum of $5,257.88.   Said sum, or any part thereof, has
never been reported to said auditor of state for the
purpose of taxation.

On these facts two questions are presented:   (1)
Did the company have the right to deduct the amount
of ''Returned Premiums'' as shown on its books from
the amount of ''Gross Premiums'' as shown on its
books and report only the balance for taxation as
''Gross Premiums Received?'' (2) Should the amount
received by the company on account of reinsurance
have been included in its statement of ''Gross Pre-
miums Received?''

Section 10216 Burns 1914, *supra,* reads as follows:
''Every insurance company not organized under the
laws of this state, and doing business herein, shall, in
the months of January and July of each year, report
to the auditor of state under oath of the president and
secretary the gross amount of all receipts received
in the state of Indiana on account of insurance pre-
miums for the six months last preceding, ending on

the last day of December and June of each year next preceding, and shall at the time of making such report pay into the treasury of the state the sum of three dollars on every one hundred dollars of such receipts, less losses actually paid within the state, and any such insurance company failing or refusing for more than thirty days to render an accurate (account) of its premium receipts as above provided and pay the required tax thereon shall forfeit one hundred dollars for each additional day such report and payment shall be delayed, to be recovered in an action in the name of the state of Indiana on the relation of the auditor of state in any court of competent jurisdiction, and it shall be the duty of the auditor of state to revoke all authority of any such defaulting company to do business within this state.''

When reading this statute the word ''premiums'' may be substituted for ''receipts.'' When so read it puts upon the company the duty to report for taxation ''the gross amount of all premiums received in the State of Indiana * * * for the six months last preceding.'' That the statute does not require the company to pay taxes on premiums never received is too plain to require elucidation. It follows, then, that the company had the right to deduct from its book entries of gross premiums the amount of premiums represented by the ''flat'' cancellations—the latter, never having been received, are not taxable under the statute. But that the company had the right to deduct, as not taxable, the amounts actually refunded to policy-holders as returned premiums, does not appear upon the face of the statute. The determination of the dispute on this point depends upon the legisla-

tive intent; for the primary rule in statutory construction requires us to explore and discover, if possible, the legislative intention in the enactment of the particular statute under consideration. *State, ex rel.* v. *Insurance Company, etc.* (1888), 115 Ind. 257, 264, 17 N. E. 574.

Counsel for the state contend that in construing the statute the tax thereby created should be regarded as purely a privilege tax, while counsel for the 3. company suggest that it partakes of the nature of a property tax. The mere name by which the tax may properly be designated is not of controlling significance; but a clear conception of the legislative purpose and plan is essential. The legislature at all times had the constitutional power to exclude foreign fire insurance companies from the state. However, in its wisdom the legislature has not pursued the policy of exclusion, but has prescribed certain terms and conditions on which they may enter and pursue their business within the state. For more than half a century the legislature has maintained a consistent and definite scheme or plan for that purpose. Acts 1865 p. 105; §3765 R. S. 1881, §4790 *et seq.* Burns 1914. Under these statutes the entrance of foreign fire insurance companies into the 4. state has been conditioned upon their compliance with certain regulatory and precautionary conditions. Said statutes emanate from the police power of the state and are designed to prevent the victimizing of resident policy-holders by insolvent companies, and to secure to policy-holders valuable remedial rights which otherwise they would not possess. (§4790 *et seq.* Burns 1914, *supra.*) On complying with these statutes a foreign fire insurance com-

pany acquires the right to engage in business in this state; and, as evidence thereof, is entitled to receive a certificate or license from the auditor of state. It would have been a simple matter for the legislature arbitrarily to have fixed an amount which every fire insurance company, without discrimination, must pay into the state treasury for the privilege of doing business within the territorial limits of the state, and as a condition precedent thereto. Under that plan each company would take the chance of its investment proving to be profitable or unprofitable. But the legislature adopted a different plan of permitting each qualified company to enter the state without contributing in advance to the revenue of the state, on the condition that at the end of each semi-annual period it shall contribute to the public revenue according to the amount of business done within the state. The primary purpose of said §10216, *supra,* is to raise revenue. It is based on the theory that a foreign fire insurance company permitted to come into the state should contribute to the public revenue in proportion to the benefits actually received. The plan is eminently fair and just. Part of the penalty provided for nonpayment of this tax is the revocation of the license to do business within the state. These statutes are interrelated and should be construed together. The one provides for the entrance of a foreign fire insurance company into the state, and the other for its expulsion therefrom. The tax may properly be called a graduated privilege tax.

5. It is a semi-annual tax imposed upon a foreign corporation for the privilege of exercising its corporate franchises and carrying on business in a corporate capacity within the state. The considera-

tion for the tax is the insurance business done within the state during the six months, ascertained at the expiration of that period and expressed in the gross amount of premiums received.

Now, what is meant by the words "premiums received?" The legislature of the State of New York enacted the following statute: "An annual state tax for the privilege of exercising corporate franchises or for carrying on business in their corporate or organized capacity within this state equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done in this state, whether such premiums were in the form of money, notes, credits, or any other substitute for money, shall be paid annually into the treasury of the state, on or before the first day of June by the following corporations: * * *"

Subsequently said statute was enlarged in many respects and the following sentence was added: "The term 'gross premiums' as used in this article shall include, in addition to all other premiums, such premiums as are collected from policies subsequently cancelled and from reinsurance."

In construing the foregoing statute, as enlarged, the New York Court of Appeals, in the case of *People, ex rel.* v. *Miller* (1904), 177 N. Y. 515, 70 N. E. 10, said: "What is the business done through a canceled policy? It is the insurance made or indemnity furnished during the period that the policy is in force. That is the only business that a fire insurance company can do. Every fire insurance policy in this state, by its terms, is subject to cancellation, and in that event it is provided both by the policy and by statute that the unearned premium shall be refunded

by the company.   \*   \*   \*   Thus a policy for a specified time continues in force no longer than both parties elect, for either may end it at will. If a policy is written for one year, but is canceled after it has run six months, the business done by means of that policy is insurance of the property affected for six months. That period covers the entire life of the policy, and the company furnishes no insurance after it has expired. It then ceases to do business so far as that policy is concerned, and if all its policies were canceled at the same time it would cease to do business altogether.

"What is the amount collected, within the meaning of the act, upon such a policy, assuming that the premium for one year was paid in advance and that the proper proportion was refunded upon cancellation? The time of viewing the transaction, as is apparent from the time when the report to the comptroller is made and the tax fixed, is not the date of the policy but the date of cancellation, when the contract ends and insurance ceases. As the tax is paid for business done, and the business done is insurance for six months, the amount collected is either the sum collected and retained, or else it includes something for business not done, or unrealized anticipations of business. While in a certain sense it may be said that payment of the premium in advance for one year involves insurance made for one year, notwithstanding the fact that according to its terms the policy is subsequently canceled, a majority of the court is of the opinion that this is inconsistent with the fair meaning of the words 'business done,' when looked back upon at the end of the year. The premium which represents business done is the amount that the company

has the benefit of and furnishes an equivalent for. It is the money earned by the policy, for the rest is a liability. * * * When part of the premium is refunded, it is the same in effect as if it had never been paid. The contract is terminated pursuant to its provisions, and thereafter the company neither gives nor takes any benefit therefrom. It no longer does business, or provides insurance through that policy. If all its policies should be canceled on the first of July and it should issue no others during the rest of the calendar year, it could not properly be said that it did any insurance business during that period. A tax upon the sum repaid would be arbitrary, for it would have no relation to the privilege of exercising the corporate franchise for which in express terms the tax is imposed. If two companies during the same year should each receive $100,000 in premiums and one should refund half while the other refunded nothing on canceled policies, taxation of both in the same amount would violate the theory of the act and trample upon the presumption that a tax is laid in return for some proportionate value received by the taxpayer. According to the construction that we have adopted, however, which impresses us as just and reasonable, the amount paid to the state would be in exact proportion to the value received by the corporation for the tax, and the object of the statute would thus be carried out in every respect. The company would have the benefit of doing the business and the state would have the revenue from all the business done.

"It may be asked: Why does the statute say gross premiums received, whether refunded or not? We think the use of the word 'gross' was intended to

include all premiums that remain in the treasury of the company and to exclude any deductions for the commissions of agents or the expense of doing business. The gross amount collected from canceled policies means the gross amount collected and retained by the company. The amount paid back is not collected for business done, but received for business expected to be done. The key to the construction of the statute is business done, for that is the basis of the tax. The state allows the corporation to do business and taxes it for such business as it actually does, not for business attempted but never completed. A canceled policy does not represent business done after the date of cancellation, for no business is done through that policy after that date. The exercise of the right to cancel interrupts the business being done by the policy and *ipso facto* renders the company liable to repay the unearned premium, and we think it would be unreasonable to hold that the sum refunded is, for the purposes of taxation under this statute, actually collected.''

In construing a statute similar to our own, the Supreme Court of Illinois, in the case of *German Alliance Ins. Co.* v. *VanCleave* (1901), 191 Ill. 410, 61 N. E. 94, said: ''It is claimed on one side that the legislature meant by the gross amount of premiums the entire premiums received for furnishing insurance indemnity during the year, while on the other side it is insisted that they meant to include all the money which comes to an insurance company, although paid under an agreement for refunding upon the cancellation of the policy, and although the policy is canceled and the insurance ceases and the money is refunded. If it is true that a part of a premium

unearned and returned to the insured is premium for business done, it is equally true that if a whole premium were returned and there was in fact no insurance the money would be premium for business done. According to the argument which would include premiums returned on canceled policies, if an insurance company should issue a policy and receive a premium and at once cancel the policy and return the premium it would have done the amount of business represented by the policy and the amount received would be a premium for insurance business done. We do not think the language used will bear that construction. The merchant would not think of including in the gross receipts of his business any sales of goods with the privilege of return on the part of the purchaser, where they are in fact returned. In such a case there is in the end no sale and no business done, in any proper sense. So in the case of an insurance policy for a definite period with an agreement that it may run any portion of that period and then cease; if the policy is canceled and the insurance ceases there is no insurance business for the remaining portion of that period. The premiums returned are not paid as a liability of the insurance company or as a charge or expense of conducting the business, but because one party or the other avails of the option and terminates the insurance. An insurance company would not be authorized to omit from its statement any part of premiums received merely on the ground that policies might be canceled in the future; but where they have been in fact canceled and the money returned, the entire or gross premium receipts cannot, by any fair interpretation, include the moneys so returned. The two per cent. collected by the insur-

ance superintendent and paid under protest is upon moneys which did not inure to the benefit of the insurance companies in any manner, and which are not premiums for furnishing fire insurance or indemnity to holders of policies. The apparent purpose of the act is to levy a tax on gross income, and not upon money which is in no sense revenue to the insurance companies."

To the same effect are the following cases: *Mutual Benefit Life Ins. Co.* v. *Commonwealth* (1908), 128 Ky. 174, 107 S. W. 802; *State* v. *Fleming* (1903), 70 Neb. 529, 97 N. W. 1063; *State* v. *Hibernia Ins. Co.* (1886), 38 La. 465. We adopt the reasoning of these learned courts.

For the purpose of taxation the company's private record kept in accordance with a plan of bookkeeping designed for its own peculiar needs is not conclusive. In computing the amount on which the company was liable for the payment of taxes, it had the right to deduct the sums refunded as returned premiums to policy-holders in this state from the gross premiums entered on its register. In other words, it was required by the statute to pay taxes only on the total amount of premiums received and earned; or, as the trial court has stated, on premiums received and retained.

Under the terms of the statute, was it the the duty of the company to pay taxes to the State of Indiana on reinsurance premiums received from other companies on account of risks located in Indiana? Statutes like the one under consideration, imposing a special tax on corporations, are within the rule that a statute providing for imposition of taxes shall be strictly construed and that all

reasonable doubts in respect thereto shall be resolved against the government and in favor of the citizen. *Mutual Benefit Life Ins. Co.* v. *Herold* (1912), (D. C.) 198 Fed. 199. In *State* v. *Hibernia Ins. Co., supra,* the Supreme Court of Louisiana said: "The terms of the law would have to be very clear and unambiguous, to command our assent to a construction of it, which would sanction a legislative intent to impose a license tax upon business pursued by the corporation in a different state, or even to refer to the receipts of such business as a basis for the graduation of a license tax."

As we construe said §10216, the legislative intent expressed therein is that the tax shall be imposed only on business done within the territorial boundaries of the State of Indiana. The

7. license is upon the business and the tax is laid on "every insurance company not organized under the laws of this state, and doing business therein." Where a foreign company takes over from another foreign company, for the purpose of reinsurance, risks on property in this state, the transaction is, of course, between the companies, and the insurer would not be subject to the tax on the reinsurance premium received if the business was not done in this state. And this would be so whether the companies were licensed to do business in this state or not.

It appears from the special finding that the reinsurance business involved in this case was transacted at the city of Chicago in the State of Illinois. Therefore, under the terms of the statute, the company is not required to pay taxes to the State of Indiana on said reinsurance premiums. Moreover, reinsurance

is not mentioned in the statute, and we are not at liberty to broaden its scope by construction.

The court found that, during the period of time stated in the complaint, the company has paid into the state treasury the sum of $129,928.07, being full payment of all taxes for which it was liable under the three per cent. law, if it had the right to exclude from its so-called "Gross Premiums" the disputed items, viz., premiums entered on its register but never received, returned premiums on canceled policies, and premiums received without this state from other companies on account of reinsurance on property located within this state. In view of our construction of the statute, it had that right; and therefore the trial court did not err in its conclusions of law with respect to the first paragraph of complaint.

II. The substance of the facts found under the issues on the second paragraph of complaint is as follows:

The following are all the statutes enacted by the legislature of the State of New York that pertain to the taxing of premiums on policies of fire insurance companies not organized under the laws of that state but doing business therein (as pleaded and proved in this cause): (a) The act of May 28, 1875, being chapter 465 of the laws of 1875, appearing in Session Laws of 1875 at page 531. (b) Said act was superseded by the act of May 18, 1892, being chapter 38 of the General Laws of that state, and appearing in Session Laws of 1892 at page 1989. (c) Said act of 1892 was superseded by the act of May 11, 1901, appearing in Session Laws of 1901 at page 1782. (d) Said act of 1901 was superseded by the act of February 7, 1909, the part thereof which is essential to this case

being §133 of the Consolidated Laws of the State of New York, pages 1793 to 1795, inclusive.  (e) The act of May 4, 1897, being §799 of the Laws of New York, Charter of New York City.

The first four of said acts are general laws and the material part thereof is the provision requiring every person who shall act as agent for any foreign fire insurance company to pay to the treasurer of the fire department of every city or village (except the city of New York) having a fire department, company or organization, for the use and benefit of such department, the sum of two dollars upon the hundred dollars, and at that rate, on the amount of all premiums received by such agent for insurance effected or procured by him on property located within the corporate limits of such city or village or within the fire limits of such unincorporated village, during the year or part of a year ending on the last day of December. The last of said acts applies to the city of New York only and requires a like payment by such agents to the treasurer of the fire department of said city, on all premiums received on policies written on property located in said city.

During the period of time stated in the second paragraph of complaint, appellee company received premiums on policies covering farm property in the State of Indiana amounting to the sum of $4,345,-269.22, and during said period received premiums on policies covering property located in cities, towns and villages in the State of Indiana, including those with fire departments and those without fire departments, amounting to the sum of $3,103,206.61.  None of the farm property covered by said insurance was situated within the corporate limits of any city, town, or

village having a fire department; but a portion of said premiums was derived from policies written on property located in cities, towns and villages which had no fire departments. The company has paid to the State of Indiana as taxes under the three per cent. law during said period of time the sum of $129,928.07. Three per cent. of the gross amount of all premiums received by the company on policies written by it in the State of Indiana from 1876 to 1911, both inclusive, less actual losses paid within the state, amounts to much more than would two per cent. upon all premiums received by the company within the state during all of said years on policies written by the company on property situated within the corporate limits of all cities, towns and villages of the State of Indiana, having fire departments.

On these facts, did the court err in its conclusion of law with respect to the second paragraph?

The statute on which this paragraph is based is in the following language: "Where by the laws of any other state, any taxes, fines, penalties, licenses, fees, deposits of money or securities, or other obligations or prohibitions are imposed upon insurance companies of this or other states, or their agents, greater than are required by the laws of this state, then the same obligations and provisions, of whatever kind, shall in like manner for like purposes be imposed upon all insurance companies of such states and their agents. All insurance companies of other nations, under this section shall be held as of the state where they have elected to make their deposit and establish their principal agency in the United States."

In no event can the New York statutes become operative in this state *as laws.* Under §4806, *supra,*

the New York statutes become *facts* in the
8.  hands of the auditor of state of Indiana, which
facts he should consider when he comes to fix
the liability of New York companies doing business
in this state.  (§7222 Burns 1914.)  Section 10216,
*supra,* is the primary taxing statute and fixes the rate
at three per cent. of the premiums received.  If the
auditor of state should have before him the fact that
the State of New York levies a lower rate on Indiana
companies doing business in New York, he is not re-
quired by the retaliatory statute to make a corre-
sponding reduction, but in that event he must adhere
to the primary law.  It is only upon the happening of
a certain contingency that he is permitted or required
to deviate from the primary law.  For the purposes
of this case, the contingency depends on whether by
the laws of New York any taxes have been imposed
upon insurance companies of Indiana or of states
other than New York, *greater* than are required by
the laws of Indiana.  In discussing the meaning of
this statute, counsel for the state say: "In determin-
ing this fact, he (the auditor of state) has but one
thing to guide him—the basis and rate imposed by
the New York law.  He has no means of determining,
and is not required to determine, where insurance
companies of this or other states write their insur-
ance in New York, whether in the country or in cities
and towns, or whether they write any insurance at
all."

In this statement we concur, but we do not concur
in their application of it.  It will be observed that the
New York statutes make no allowance for losses paid;
and it is contended that a rate of two per cent. on
all premiums received by appellee in Indiana, without

regard to losses paid in Indiana, might yield more revenue in certain taxing periods than the three per cent. rate on the balance after deducting said losses—depending upon the proportion the losses sustained happen to bear to the premiums received. The argument is that if the company's semi-annual report shows that it has been unfortunate and has paid losses during that period in excess of one-third of the premiums received, then it should be denied the right to deduct the losses and should be compelled to pay two per cent. of the total premiums. But if it has been fortunate and has paid losses amounting to less than one-third of the premiums received, then it should be permitted to deduct the losses and should be compelled to pay three per cent. on the balance. In other words, when the auditor of state comes to decide whether the primary law or the retaliatory law shall be applied, he should have in mind but one question, viz.: Which law, on the facts disclosed by the report, will put the greater number of dollars into the treasury? This argument ignores the luminous fact that the enactment of the retaliatory statute was not prompted by a tender solicitude for the public treasury, but rather by the desire to secure for the fire insurance companies of. Indiana even-handed treatment by the legislatures of other states. This end it seeks to attain through the *lex talionis*. The retaliatory statute plainly demands "an eye for an eye, and a tooth for a tooth." Being penal in its nature and involving the comity of states, it must be strictly construed and executed with care. 14 R. C. L. 863; *Talbott v. Fidelity, etc., Co.* (1891), 74 Md. 536, 22 Atl. 395, 13 L. R. A. 584; *State, ex rel. v. Insurance Co.* (1892), 49 Ohio St. 440,

31 N. E. 658, 16 L. R. A. 611, 34 Am. St. 573; *Germania Ins. Co.* v. *Swigert* (1889), 128 Ill. 237, 21 N. E. 530, 4 L. R. A. 473; *Haverhill Ins. Co.* v. *Prescott* (1861), 42 N. H. 547, 80 Am. Dec. 123. The taking of an eye for a tooth, or a tooth for an eye, cannot be permitted. The statute demands like for like. It plainly directs that "the same obligations and provisions of whatever kind, shall in like manner and for like purposes be imposed," etc. The amount of revenue that may be derived under this statute is a fact legitimately to be considered, but it is incidental to the main purpose of the statute. There are other facts of equal importance which also must be considered. Indeed, none of the facts within the purview of the statute can be ignored.

In the case at bar the auditor of state, in attempting to apply the retaliatory statute, would be confronted by the following facts arising out of the New York laws: (1) That premiums derived from insurance on farm property and on property in towns and villages not having fire companies, are not taxed at all; (2) that premiums derived from insurance on property in cities, towns and villages having fire companies, are taxed at the rate of two per cent.; (3) that the obligation to pay this tax is laid upon the local agent, not upon the company, and the agent is liable to forfeiture for failure to discharge the obligation; and (4) that the funds derived from this tax belong to the municipality where collected and must be used for the benefit of its fire company or companies. Now, when we come to transfer this identical situation to the State of Indiana and attempt to impose on appellee *the same obligation in the same manner and for the same*

purpose, it becomes apparent that the retaliatory statute cannot be enforced in this action.

Moreover, the trial court found from the evidence that the company has paid more in taxes under the primary law than could have been collected under the retaliatory law. This finding must stand. So that even on appellant's own theory, this finding puts an end to the controversy.

The trial court did not err in its conclusions of law with respect to the second paragraph of complaint.

The conclusion we have reached makes it unnecessary that we should consider the other questions presented by appellee's answers. Judgment affirmed.

NOTE.—Reported in 116 N. E. 929. See under (1) 37 Cyc 841; (3, 5) 22 Cyc 1391; (7) 37 Cyc 841.