(No. 13630.—Reversed and remanded.)

THE METROPOLITAN LIFE INSURANCE COMPANY, Appellee, *vs.* WILLIAM H. BOYS, Director of Trade and Commerce, Appellant.

*Opinion filed December 21, 1920—Rehearing denied Feb. 14, 1921.*

1. INSURANCE—*paragraph 200 of the Insurance statute is retaliatory and must be strictly construed.* Paragraph 200 of chapter 73 of the Revised Statutes, entitled "Insurance," (Hurd's Stat. 1917, p. 1730,) is intended to retaliate against States which have taxed Illinois life insurance corporations greater rates than the domestic life insurance corporations of such States are taxed in Illinois for doing business here, and being retaliatory the statute must be strictly construed and should not be applied to a case that does not fall plainly within its letter.

2. SAME—*a foreign life insurance company is not entitled to credit for the alleged excess taxes paid in previous years.* Paragraph 200 of chapter 73 of the Revised Statutes, entitled "Insurance," does not authorize the insurance department of Illinois to allow as a credit upon the taxes assessed against a foreign life insurance company an amount which the company has paid into the

State treasury as taxes in previous years, which the company claims is in excess of what it should have paid under a proper construction of the law of the State of the company's domicile and an amendment of such law subsequent to the alleged over-payment.

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

CARTWRIGHT, C. J., specially concurring.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for appellant.

FRANK EWING, (GEO. B. & GEO. M. GILLESPIE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill for injunction was filed by the Metropolitan Life Insurance Company, appellee, a New York corporation, in the circuit court of Sangamon county, to enjoin William H. Boys, as Director of Trade and Commerce of the State, from paying over to the State Treasurer certain moneys which had been paid in 1918 to the director by the life insurance company under protest, as taxes for the year 1918. The bill also sought an accounting and credit for taxes which appellee paid in 1902, 1903 and 1904, to be taken from the taxes due from it in 1918. Appellant having filed a general demurrer, which was overruled, elected to abide by the demurrer and the court entered a decree in appellee's favor. This appeal followed.

The appellee is attempting to retain by this proceeding money paid by it as a tax upon its premium receipts from business done in Illinois during the three years mentioned, under our statute, construed in connection with the statute of New York. Appellee claims that it paid by mistake in these three years, in excess of the amount actually due from it to this State under a proper construction of said statutes, $60,148.61. This tax was paid to this State under the requirements of paragraph 200 of chapter 73 of the Illinois

statutes on insurance, which reads in part: "Whenever the existing or future laws of any other State of the United States shall require of life insurance companies, incorporated by or organized under the laws of this State and having agencies in such other State, * * * any payment for taxes, fines, * * * license fees or otherwise, greater than the amount required for such purposes from similar companies of other States by the then existing laws of this State, then and in every such case, all life insurance companies of such States * * * shall be and are hereby required * * * to pay to the Auditor, for taxes, fines, * * * license fees * * * an amount equal to the amount of such charges and payments imposed by the laws of such other State upon the companies of this State."

While this Illinois act was in force a statute was passed in New York imposing a premium income tax on insurance companies of other States doing business in New York, and that act, it is conceded, made operative the Illinois act above quoted, which was enacted for that purpose. Subsequent to the enactment of the New York statute a decision was handed down by the New York Court of Appeals, holding that the effect of that statute began, so far as domestic corporations were concerned, as of January 1, 1902, and did not include renewal premiums collected. The decision of the New York Court of Appeals on this question is *People* v. *Miller,* 179 N. Y. 227, handed down in 1904, construing the statute passed in 1901, (1 Laws of N. Y. 1901, p. 298,) amending a statute passed in 1896. That decision did not attempt to pass on the question of what penalties or fees foreign insurance companies should pay in New York under such statute, but only the amount of fees or taxes that should be paid by a domestic insurance company doing business in New York. It was held that the amended law authorizing a tax upon the gross amount of premiums received during the preceding calendar year from domestic insurance companies for the privilege of ex-

ercising corporate franchises and carrying on business in the State was not retroactive and retrospective in its operation, and imposed the tax not upon premiums received from contracts made prior to the time the statute took effect, but upon future business, only, the opinion saying (p. 229) : "The tax is purely a franchise tax, and nothing else, as to domestic corporations. The tax imposed 'for carrying on business in their corporate or organized capacity' applies only to foreign corporations deriving their franchises from other sovereignties."

There is merit in the argument of counsel for the State that it is a fair inference from the reading of this entire opinion that as to foreign corporations doing business in New York the tax might be legally imposed upon all premiums collected during the year, whether the policies were written before or after the law imposing the tax went into effect. The court does not say whether or not premiums from policies issued prior to the enactment of the amendment concerning foreign concerns would be subject to the tax. From what it says they might or might not be. The opinion did not decide that question, and it seems to be conceded that the question has not been passed on since by the highest court of New York. If that court should ever hold that the State of New York could assess such a tax against foreign insurance companies, then the whole force of appellee's argument falls to the ground.

Counsel upon both sides have argued at some length whether paragraph 200 of chapter 73 of our statutes, under which these taxes were originally paid to the Illinois authorities, is a "reciprocal" or a "retaliatory" statute. While said paragraph as printed in Hurd's Statutes is headed "Reciprocity," it seems to be conceded that it was not so headed when the statute was enacted in 1869; that the heading was placed there by the compilers of Hurd's Statutes. The text writers and courts have not always used the terms "reciprocal" and "retaliatory" with a nice distinc-

tion as to their meaning, and sometimes the words have been used as somewhat synonymous. Thus, in 12 R. C. L. 67, under the heading "Retaliatory legislation" the author says: "Moreover, while it is doubtless true that the ultimate object of such statutes· is to secure reciprocity, their immediate object is to retaliate on the companies of a given State disfavors shown to domestic companies in such State, consequently they are penal in character, and must, unlike reciprocal statutes, be strictly construed. It has therefore been said that it is not permissible to read into an enactment of this kind words not found in its text, for the purpose of giving it a construction in conformity with its supposed policy." In 19 Cyc. 1264, it is said: "In a number of States statutes against foreign corporations, known as 'retaliatory' statutes or as statutes of 'reciprocity,' have been enacted." And again, on page 1266: "In the construction of these statutes a distinction has been taken between them and statutes of reciprocity, in that while statutes of reciprocity are to be liberally construed these statutes of retaliation are to be strictly construed; and it has been said that a statute of the latter kind is 'not applied to a case that does not fairly fall within its letter.' " To the same effect is 5 Thompson on Corporations, sec. 6647. In *State v. Insurance Co.* 49 Ohio St. 440, the court stated (p. 443) : "It is claimed to be reciprocal in character and should therefore be liberally construed. A little reflection will, we think, show that it is not of this nature, but, upon the other hand, retaliatory, and should therefore be strictly construed, or, in other words, not applied to a case that does not fall within its letter. Reciprocity expresses the act of an interchange of favors between persons or nations; retaliation, that of returning evil for evil or disfavors for disfavors. Accurately speaking, we reciprocate favors and retaliate disfavors. This, then, is a retaliatory statute." See, also, somewhat similar discussions of this question as to kindred statutes in *Talbott* v. *Fidelity and Casualty Co.* 74 Md. 536,

*Fidelity and Deposit Co.* v. *Brown,* 92 Vt. 390, and *State*
v. *Insurance Co. of North America,* 115 Ind. 257. In *State*
v. *Fidelity and Casualty Ins. Co.* 39 Minn. 538, the court
discusses a similar statute and calls it "retaliatory." This
court in *People* v. *Fidelity and Casualty Co.* 153 Ill. 25,
quotes with approval that part of the Minnesota opinion
denominating such a statute "retaliatory," and would seem
plainly to intimate that it considered our own statute on the
subject "retaliatory" in its nature. In discussing the Illi-
nois statute here under consideration in *Germania Ins. Co.*
v. *Swigert,* 128 Ill. 237, and *Union Central Life Ins. Co.*
v. *Durfee,* 164 id. 186, while the opinions do not discuss
this question in terms, it will be noted the syllabus to each
of these opinions published in the bound volumes of the
Illinois Reports calls the statute "retaliatory," and the text
writers, in commenting on those decisions, have shown that
they understood the court was holding such statutes re-
taliatory in their nature. (See 12 R. C. L. 68, note 6, as
to *Germania Ins. Co.* v. *Swigert, supra,* and 2 Bacon on
Life and Accident Insurance, (4th ed.) sec. 653, where
*Union Central Life Ins. Co.* v. *Durfee, supra,* is cited un-
der the heading "Retaliatory legislation.") The encyclo-
pedias and digests have frequently discussed this legislation
under the heading "Retaliatory legislation." (See 16 Am.
& Eng. Ency. of Law,—2d ed.—901; 2 Joyce on Insur-
ance,—2d ed.—sec. 329; 11 Am. Digest,—Decennial ed.—
"Insurance," secs. 19, 28, Century ed. sec. 15.) It will
be noted in this connection that these digests have cited
some of our Illinois decisions already referred to, under
this heading.

It seems quite clear from a consideration of the language
of paragraph 200 that it was not intended by this statute
to reciprocate for past or present favors but to retaliate
against the States from which the foreign corporations
came, by levying certain penalties in Illinois on such for-
eign insurance companies, for it will be noted that the lan-

guage of said paragraph does not provide that the deposits, taxes, fines, penalties and fees shall be the same as those fixed by the New York law upon foreign corporations, but only that when the deposits, taxes, fines, penalties, fees, etc., fixed by the New York law are greater than the amount required for such purposes from similar companies of this State, then the same fees are to be collected from the New York corporations in this State. There is nothing in this statute to intimate that Illinois will not tax foreign insurance companies at a higher rate than New York taxes them. Without question it has the power to do so, and if it should determine to do so it then would tax them at the rate fixed by its own statute, and the New York statute would have nothing to do with it. The Illinois statute did not say to New York, "We will collect from your insurance companies the same taxes that you collect from Illinois or other foreign companies," but what was said to New York is substantially as follows: "If you collect from Illinois and other foreign insurance companies taxes at a greater rate than we tax them, we will collect from your insurance companies that same rate." This is clearly a retaliatory and not a reciprocal provision of the statute. The decision as to whether this is a reciprocal or retaliatory statute affects the construction that shall be given to the act. As was said in 12 R. C. L. and 19 Cyc., already quoted from, if it is a retaliatory statute then it must be strictly construed and should not be applied to a case that does not fall plainly within its letter; and in 5 Thompson on Corporations, sec. 6647, it is said: "A retaliatory statute is penal in character and hence subject to the rule of strict construction. The operation of the statute must be confined to such cases as fall within its letter."

The conclusion seems necessarily to follow in this case that the provisions of the Illinois statute under which this license fee or tax was paid in the years 1902, 1903 and 1904 is retaliatory in its nature, and therefore the statute,

read in connection with the New York statute here under consideration, will only be construed to cover those cases that come plainly within the letter. Paragraph 200 of chapter 73 does not in terms, directly or indirectly, refer to any revision or re-adjustment or re-payment of taxes that have been paid and audited for previous years. It does not appear from a reading of the statute that the Illinois legislature had in mind in any way the paying back or reimbursement to any of the insurance companies of taxes that might have been paid by mistake for previous years. It is true that the New York statute construed by the New York Court of Appeals in 1904 in *People* v. *Miller, supra,* was obviously drafted for the re-payment of any taxes or license fees that had been paid by mistake under existing laws, but the bill filed herein does not state that this application was made within one year from the time the tax was audited, as required by the New York statute, and it seems to be conceded that it was not made within that time, though it is true that in 1918 an amendment to this New York statute was passed providing that such fines or penalties paid in excess of the amount legally charged could be refunded at any time by the superintendent of insurance. (2 Laws of N. Y. 1918, p. 1128.) If the Illinois statute be given, as we have held it must be given, a strict construction, it does not by its letter give the right, power or authority to allow the credits claimed by appellee toward the reduction of taxes for any subsequent year. Under that statute, fairly construed, when a tax has been once assessed and collected and paid into the State treasury said officers have no further power with reference to it.

It is proper to note in this connection that since the passage of the statute of 1918 in New York appellee has filed an application for credits with the Illinois insurance superintendent, which was refused, and it had prior thereto made attempts to have such claim allowed before different sessions of the Illinois legislature and by the court of

claims, all of which have been ineffectual until the decision of the circuit court of Sangamon county herein holding that appellee was entitled to an accounting and to a credit of $60,148.61, to be taken from the $99,758.99 assessed against said company by the Illinois authorities for and on the premiums for 1918.

It would seem that unless the amendment passed by the New York legislature in 1918 shall apply and be considered in construing the Illinois statute, there is no possible chance for holding, as did the trial court, that these refunds or credits should be allowed from the taxes or license fees of 1918. It does not appear from the bill filed herein, or from the record, that the New York superintendent of insurance has collected from Illinois corporations any excess taxes on the ground that New York corporations have been overcharged through an erroneous interpretation of the Illinois law by its taxing authorities, nor does it appear that Illinois has refunded or allowed credit for any overcharges to New York corporations. The argument of counsel for appellee is, that the last amendment of 1918 has amended, in effect, paragraph 200 of chapter 73 of our statute, and that therefore it is now enforceable under said paragraph. To thus allow the statutes of Illinois to be amended by the statutes of other States, passed years thereafter, would seem to us to be extending beyond any reasonable limit the doctrine of reciprocity or comity between States. This would permit the legislative authorities of another State to amend the statutes of their own State and to pass such legislation as would give preference in that State to their own corporations as against the home corporations of Illinois. So far as we can understand, there is no reason to suppose that our legislature by the enactment of paragraph 200 intended to give foreign corporations any preference over corporations or citizens of this State in the matter of refunds or credits for taxes or fees paid voluntarily under a mistake of law. Said paragraph makes no provision for refund or

credit for taxes or fees collected from our home corporations or through an erroneous construction of the law. It seems unreasonable to suppose that the legislature intended by the provisions of paragraph 200 to make an inequitable distinction between citizens of this State and citizens of other States doing business in this State, and this would be the result if the argument of appellee be sustained.

We have no means of knowing, under the reasoning of *People* v. *Miller, supra,* whether the final court of appeal in New York will ultimately hold that these taxes paid by foreign corporations in former years should be re-paid under the then statute. As already stated, we cannot decide as to the effect on foreign corporations by the decision of the New York Court of Appeals and the cases relied on by counsel for appellee. Moreover, giving a strict construction to paragraph 200 of chapter 73, the public authorities charged with enforcing this law,—now being the Director of Trade and Commerce,—are not required, nor have they been given the right, power or authority under said paragraph, to give the credit claimed by appellee in reduction of the taxes for any subsequent year or years. Under said paragraph, when a tax has once been assessed, collected and paid into the State treasury the Illinois authorities have no further power with reference to it. This being so, the conclusion follows that the decree of the circuit court of Sangamon county without authority enjoined the Director of Trade and Commerce with reference to said taxes.

Counsel for appellant have also argued that these taxes having been paid voluntarily cannot be recovered nor thereafter credited on later taxes. They also argue at length that this is, in effect, a suit against the State and under the constitution cannot be maintained, and that the claim is also *res judicata* by reason of the decision of the court of claims of this State in *Metropolitan Life Ins. Co.* v. *State of Illinois,* 2 Court of Claims 79, where this question was passed

on adversely to appellee's claim. They also argue that the claim is barred by the Statute of Limitations and by *laches*. These questions have all been argued at length in the briefs of counsel. In view of our conclusion upon the points already considered and discussed we find it unnecessary to consider any of these questions.

The decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

Mr. CHIEF JUSTICE CARTWRIGHT, specially concurring:

The prayer of the bill was that the insurance superintendent should be enjoined from paying into the State treasury a sum of money due for taxes on premiums collected during the calendar year 1918 and should credit against the amount so due the aggregate of payments made by the complainant for taxes on premiums collected in the years 1902, 1903 and 1904 and to re-pay the same to the complainant. The bill, therefore, in substance and fact was for the purpose of recovering back taxes voluntarily paid without fraud, imposition, coercion or ignorance or mistake of facts but only because of the alleged misinterpretation by the complainant of the law. If there was such misinterpretation and the complainant was under no legal obligation to pay the taxes the law does not afford any legal remedy to recover them back. (*Elston* v. *City of Chicago,* 40 Ill. 514; *People* v. *Miner,* 46 id. 374; *Swanston* v. *Ijams,* 63 id. 165; *Union Building Ass'n* v. *City of Chicago,* 61 id. 439; *Walser* v. *Board of Education,* 160 id. 272; *Otis* v. *People,* 196 id. 542; *Yates* v. *Royal Ins. Co.* 200 id. 202; *City of Chicago* v. *McGovern,* 226 id. 403; *People* v. *Illinois Central Railroad Co.* 265 id. 429; Cooley on Taxation, 565; Dillon on Mun. Corp.—3d ed.—secs. 944-946.) On this ground I concur in the judgment in this case.