[Sac. Nos. 3348, 3349, 3350, and 3351 (Consolidated Cases).  In Bank.—
September 20, 1923.]

## BANKERS LIFE COMPANY (a Corporation), Appellant, v. FRIEND WILLIAM RICHARDSON, as Treasurer of the State of California, Respondent.

[1] TAXATION — INSURANCE COMPANIES—GROSS PREMIUMS—CONSTRUCTION OF CONSTITUTION.—The constitutional amendment of this state, adopted November 8, 1910, providing for taxation of insurance companies (subdivision (b), section 14, of article XIII), should be construed as providing that it was a "gross earnings tax" which the framers of the amendment intended, which implies that all earnings, either by way of premiums or assessments, must be included in the term "gross premiums received upon its business done in this state"; and this amendment applies equally to all insurance companies, whether fire or life, and whether doing business as stock concerns, dividing profits periodically among their members, or as mutual concerns.

[2] ID.—RETALIATORY PROVISIONS — CONSTRUCTION. — Where an insurance company organized in a foreign state and doing business in this state is taxed by this state upon the gross premiums, including assessments, collected and received by it during a certain year at the rate of two per cent, aggregating an amount exceeding that which a similar corporation organized in this state doing the same amount of business for that year in the foreign state would be taxed, this state has no right to impose on the foreign corporation an additional tax under the retaliatory provisions of the constitution.

[3] ID.—NATURE AND OBJECT OF RETALIATORY LAWS.—The so-called retaliatory laws are also reciprocal in nature, their ultimate object being to secure reciprocity and do away with discrimination.

[4] ID.—STRICT CONSTRUCTION.—Whether regarded as reciprocal or retaliatory, the so-called retaliatory laws, in so far as they are retaliatory in their nature, and involving the comity of states, are to be strictly construed, executed with care, and not applied to any case that does not fall plainly within the letter of the law.

APPEAL from a judgment of the Superior Court of Sacramento County.  Charles O. Busick, Judge.  Reversed.

The facts are stated in the opinion of the court.

1.  State tax on premiums of foreign insurance companies, note, 57 L. R. A. 71.
2.  Constitutionality of retaliation tax laws, note, 60 L. R. A. 360.

W. S. Ayres, R. B. Alberson and Raymond Perry for Appellant.

U. S. Webb, Attorney-General, and E. P. Power, Assistant Attorney-General, for Respondent.

WASTE, J.—The plaintiff, Bankers Life Company, brought four actions to recover excess taxes alleged to have been illegally levied and collected by the state of California. It appeals from a judgment of the lower court in favor of Friend William Richardson, as state treasurer, defendant, and against it, as plaintiff. The primary question presented is whether or not, under the constitutional amendment relating to taxation, which was adopted November 8, 1910, and the acts passed by the legislature to carry its provisions into effect, assessments collected by plaintiff from its members under its assessment contracts may be included in the term "gross premiums" received on its business done in this state, and taxed as such.

The plaintiff is incorporated under the laws of the state of Iowa, and authorized to do business in the state of California as an assessment life insurance company or association. It amended its articles of incorporation in 1911, under the provisions of section 1798b, Code Supplement 1907 of the Statutes of Iowa, in such manner as to transform itself into a legal reserve or level premium company. It also amended its charter to read: "Article III. The purpose and intent of this amendment is to transform this corporation into a legal reserve or level premium, mutual insurance company, . . . and its business shall be that of life insurance on the mutual plan, as a legal reserve or level premium company . . . ," retaining all its original rights, powers, privileges, and franchises, so far as might be necessary to carry out all its contracts theretofore made with its members. By amendments to its by-laws, it provided that the rights, liabilities, and entire method of procedure with reference to its outstanding assessment contracts should be governed by the original articles and by-laws forming a part of such assessment contracts.

Prior to these amendments, the plaintiff had written many contracts of insurance upon the assessment plan in this state. Since the adoption of the amendments its business has included the writing of level premium insurance and the

making of assessments in carrying out its contracts with its original assessment members. In the year 1916 plaintiff received on its business in force on the level premium plan in the state of California premiums amounting to $351,033.38, and collected assessments from its assessment members, under its original assessment contracts in the state, in the sum of $212,051.35, making its gross receipts for business done in the state during the year $563,084.73. Pursuant to the terms of the act carrying into effect the provisions of the constitution relating to the taxation of insurance companies (Stats. 1915, pp. 3, 4) there was imposed upon plaintiff, and it paid under protest, a state tax on this aggregate amount, at the rate of two and one-half per cent upon its gross premiums for business written on the level premium plan, and at the rate of two per cent upon its receipts from its assessment members, the total tax amounting to $13,016.86. Alleging that a large part of this tax was illegally imposed and collected, plaintiff brought this action to recover such excess. Separate actions were also begun by it to recover the alleged overpayment of taxes levied and collected for business done during the years 1917, 1918 and 1919. Demurrer to the complaint was sustained in each case, without leave to amend. Judgment was thereupon entered for the defendant, and these appeals were taken.

It must be determined, first, whether or not, under the constitution and laws of this state, assessments collected by the Bankers Life Company from its members on contracts of insurance issued on the assessment plan are subject to a state tax of two per cent, or any tax. Whether they are or are not depends upon the construction of subdivision (b), section 14, of article XIII of the constitution of California, which was adopted November 8, 1910, as part of the general scheme for the separation of state and local taxation. The provision of the constitution is as follows: "Every insurance company or association doing business in this state shall annually pay to the state a tax of one and one-half per cent upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state; provided, that there shall be deducted from said one and one-half per cent upon the gross premiums the amount of any county and municipal taxes paid by such companies on real estate owned by them in this state. This tax shall

be in lieu of all other taxes and licenses, state, county and municipal, upon the property of such companies, except county and municipal taxes on real estate, and except as otherwise in this section provided." Then follows the retaliatory clause of the section which authorizes the imposition by the legislature, upon foreign insurance companies doing business in this state, of the same obligations and prohibitions as are imposed on insurance companies of this state by the states of such foreign companies. It was provided by subdivision (f) of the same section of the constitution that all the provisions of the section should be self-executing, and the legislature was directed to pass all laws necessary to carry the section into effect. It was further provided that the rates of taxation fixed in the section should remain in force until changed by legislative enactment. The legislature enacted general laws (Stats. 1911, p. 530; Stats. 1913, pp. 3, 4; Stats. 1915, pp. 3, 4, and Stats. 1917, p. 338) to carry the constitutional provision into effect. The last enactment germane to this case, the statute of 1917, is now section 3664b of the Political Code, the language of which is identical with the constitutional provision except that the rate of taxation is fixed at two per cent, and instead of reading that the legislature "may" impose retaliatory obligations and prohibitions on foreign insurance companies, it declared that the insurance commissioner "must" do so. It was under the authority conferred by the constitution and these legislative enactments that the tax was imposed upon the entire business done in this state by the plaintiff during the years 1916–1919, inclusive.

It is the contention of the appellant that the construction so placed by the taxing power of the state upon the language of the constitution and the code section is an erroneous one, and that it was not the intention of the framers of the amendment and of the laws enacted pursuant thereto that the words "gross premiums" should cover or refer to assessment receipts of such an organization as appellant. It first cites many authorities which hold that in general insurance parlance the word "assessment," when used with reference to such organizations, generally applies to the contributions or payments by the members, sometimes made after the death of a member, as distinguished and differentiated from the word "premium," which is as generally applied to the consideration paid by policy-holders of level premium com-

panies. We do not deem it necessary to further discuss the
authorities cited by the appellant beyond saying that they
establish the general usage of the words "assessments" and
"premiums" in the connection in which they were used in
the cases cited, for it is equally well established that "in a
broad sense an assessment pays the price of a policy in a
company of that sort [an assessment company], just as a
fixed premium affords the consideration of a policy in a legal
reserve or level premium company, and in common speech
the terms are often interchangeably used." (*Bankers Life
Co.* v. *Chorn* (Mo.), 186 S. W. 681; *Hill* v. *Farmers' Mut.
Fire Ins. Co.,* 129 Mich. 141 [88 N. W. 392]; *Northwestern
Life Assn.* v. *Stout,* 32 Ill. App. 31, 38.)

Prior to the adoption of the constitutional amendment of
1910, and the enactment of the legislative measures to carry
it into effect, the law relating to the taxation of insurance
companies was to be found in various provisions of article
XVI, chapter 3, title I, part III, of the Political Code relat-
ing to the office of insurance commissioner and the govern-
ment of insurance companies in this state. The respondent
takes the position that, from a reading of those provisions,
and particularly in view of the fact that the foundation for
the present tax is based on a self-executing constitutional
provision, it is clear that the tax imposed upon insurance
companies by the constitutional amendment was intended to
be, and is, in lieu of that formerly imposed by the provisions
of the code. Section 622, the original "retaliatory clause,"
enacted in 1872, and frequently amended, provided (Stats.
1907, p. 162), at the time of the adoption of the amendment,
that "when by the laws of any other state or country, any
taxes, fines, penalties, licenses, fees, deposits of money or of
securities, or other obligations or prohibitions, are imposed
on insurance companies of this state doing business in such
other state or country, or upon their agents therein, in ex-
cess of such taxes, fines, penalties, licenses, fees, deposits of
securities, or other obligations or prohibitions, imposed upon
insurance companies of such other state or country, so long
as such laws continue in force, the same obligations and pro-
hibitions of whatsoever kind must be imposed upon insurance
companies of such other state or country doing business in
this state. . . . " By section 622a, enacted in 1903, a tax
was levied on insurance companies not organized under the
laws of this state. As finally amended (Stats. 1907, p. 162)

it provided: ''Every insurance company other than life, not. organized or incorporated under the laws of California, and doing business in this state, and every other insurance company other than life, whose charter may be owned or a majority of whose stock may be controlled, or whose business may be carried on in the interest, or for the benefit of any insurance company or association not organized or incorporated under the laws of California, shall annually pay to the insurance commissioner, for the state, a tax of two per cent upon the amount of the gross premiums received upon its business done in the state, during the year ending on the preceding thirty-first day of December, less return premiums, reinsurance in companies authorized to do business in this state, and losses actually paid on its business in this state, and every life insurance company not organized or incorporated under the laws of California, which does business or collects premiums or assessments in the state, shall annually pay to the insurance commissioner, for the state, a tax of one per cent upon the amount of gross premiums received upon its business done in this state during the year ending on the preceding thirty-first of December.

''This section shall not be held or construed so as to relieve any company or organization from any tax, fee, or other obligation or charge imposed upon it by the provisions of section six hundred and twenty-two of this code, and whenever the taxes imposed by the application of section six hundred and twenty-two exceed those imposed by the application of this section the provisions of the former section shall prevail.''

Respondent argues that from a consideration of these sections it is evident that the legislature, as early as 1907, intended to include ''assessments'' as ''premiums'' in computing the amount of ''gross premiums'' received by any life insurance company during any given year. The state bases its construction on the language of section 622a, *supra*, which declares that ''every life insurance company . . . which does business or collects premiums or assessments in the state shall annually pay . . . a tax . . . upon the amount of the gross premiums received upon its business.'' Such intention, it contends, was reflected in the constitutional amendment and the subsequent legislative enactments. The appellant seeks to escape this construction of the present law by invoking section 634a of the Political Code, which purports to except from the provisions of the act relating to the insurance com-

missioner and the government of insurance corporations in the state, corporations doing or transacting the business of mutual insurance on the assessment plan, as defined in the Civil Code. (Sec. 453d.) If it be true that section 634a of the Political Code had the effect contended for by appellant, mutual insurance companies would still be subject to the retaliatory provisions of section 453i of the Civil Code, which prescribe the conditions upon which mutual assessment corporations organized under the laws of any other state or country may transact business in this state, and which, in part, provide that "when any other state or country imposes any additional license, fees, taxes, or penalties upon any corporation organized or doing business under this chapter, like license, fees, taxes, or penalties are imposed upon corporations of the same kind and their agents of such state or country doing business in this state." (Stats. 1905, pp. 419, 420.) We are of the opinion that the contention of the state, and not that of the appellant, is the correct one. Section 622a very clearly indicates to our minds that the phrase "gross premiums" was intended to, and did, include both premiums and assessments. No other reasonable construction can be placed upon its language.

But whether our view of what the law was before the adoption of the constitutional amendment of 1910 is correct or not does not concern us at the present time. Pursuant to the act of the legislature of March 20, 1905 (Stats. 1905, p. 390), a joint committee of the senate and assembly was appointed to investigate the system of revenue and taxation in force in this state, and to recommend a plan for the revision and reform thereof. That commission made two reports—one in 1906 and the other in 1910—which are official publications of this state. (Appendix to Journals of Senate and Assembly, 37th Session, 1907, vol. II, and 39th Session, 1911, vol. I.) They are also to be found in separate publications issued by the state printing office. They are particularly instructive in connection with the question presented by this appeal. It is not necessary for us to go into the reasons for the change in the system of state taxation, some of which have already been considered by this court in *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420 [143 Pac. 700], and which may be more fully appreciated by a reading of the reports of the commission. The legislature, in the regular sessions of 1903, 1905, and again in the special ses-

sion of 1906, had made several important changes in the revenue laws of the state. These resulted in new or increased revenues from several sources, among them being the taxation of insurance companies. Every insurance company, including life, not incorporated under the laws of California, was required to pay annually a tax of two per cent upon the amount of gross premiums received by it on business done in the state, less certain deductions. All foreign insurance companies doing business in this state were subject to the so-called "retaliatory law" (sec. 622; Pol. Code). These taxes on insurance companies, it will be recalled, were the only special corporation taxes then imposed in this state. It was pointed out in the first report of the commission that the existing laws relating to the taxation of insurance companies discriminated in favor of the companies of certain states and countries, and against those of other states, and also discriminated between the different classes of insurance companies. The commission was concerned primarily to find a method which should remove these discriminations. It believed, it stated, "that the taxes on all insurance companies of whatever class, or state, or country, should be as nearly uniform as possible." It recommended absolute separation of state from local taxation as to sources of revenue; and in specifying the "old sources" from which the state might derive its revenue, it listed, among others: "(3) The Tax on Insurance Premiums. (Modified to remove existing discriminations.)" Among the "new sources" for such purpose, it included: A gross earnings tax on railroads; street railroads; express companies; car companies; light, heat and power companies; telegraph and telephone companies, at fixed rates, for a period of years, by constitutional amendment, and subject to future amendment by the legislature. (Report 1906, pp. 11, 12, 254.) After a summary of the situation which confronted it, and the various arguments presented in favor of and against any taxation on life insurance companies, the commission says (p. 258) : "The only real point at issue is to determine the method and the rate. If a gross earnings tax is appropriate for a railroad, it is equally appropriate for an insurance company. All the more so, in the latter case, as there is not likely to be any property within the jurisdiction of the state to tax. A tax on gross premiums falls on the company, or the stockholders therein—not, as some agents and company advocates would

have us believe, on the policy-holder. In mutual insurance companies the policy-holder occupies at the same time the place of stockholder and of policy-holder. In such cases he will bear his share of the tax, as he should, for he gets his share of the profits.''

The commission recommended that all insurance companies, fire as well as life, foreign and domestic alike, should pay two per cent per annum on gross premiums, without deductions for losses, such taxes to be in lieu of all other taxes and licenses, except taxes on real estate held in and taxable in the state. It also recommended the continuance of the retaliatory law, ''not only for the protection of domestic companies, but because it is believed to exercise a powerful influence in the direction of bringing about uniformity in methods of taxation by the different states.'' (Report of 1906, p. 259.) The subject was again under consideration by the commission prior to the submission of the amendment to the popular vote. In the discussion of the effect of the proposed amendment on corporations, and in explanation, it said (Report of 1910, p. 37) : ''As to the insurance companies, they are not now subject to the *ad valorem* tax, and the amendment does not change the present system except in so far as it proposes to extend the same method and the same rate to all.'' The constitutional amendment, hereinbefore quoted, provided that *every* insurance company or association doing business in this state should annually pay a tax of one and one-half per cent upon the amount of the gross premiums received upon its business done in the state, less the enumerated deductions. An act of the state of Illinois provided that all insurance companies, other than life, should ''pay to the insurance superintendent as taxes 2 per cent of the gross amount of premiums received by it for business done in the state'' during the preceding calendar year. The supreme court of Illinois said: ''In the construction of the act, effect is to be given to the intention of the legislature, and that intention appears to be to levy a tax on the gross income of foreign fire insurance companies. The object is to require such companies to pay at designated times a tax of 2 per cent on the gross receipts of their business for the previous calendar year.'' (*German Alliance Ins. Co.* v. *Van Cleave,* 191 Ill. 410 [61 N. E. 94].)

[1] We think it clear, therefore, that the first contention of the appellant must fall, and that the constitutional amend-

ment should be construed as providing that it was a "gross earnings tax" which the framers of the amendment intended, and which the people levied by the adoption of this amendment. To so hold, of course, implies that all earnings, either by way of premiums or assessments, must be included in the term "gross premiums received upon its business done in this state." This court has already held that the amendment to the constitution applies equally to all insurance companies, whether fire or life, and whether doing business as stock concerns, dividing profits periodically among their members, or as mutual concerns. (*Northwestern Mutual Life Ins. Co.* v. *Roberts,* 177 Cal. 540, 542 [171 Pac. 313].)

[2] Appellant's second contention is that if it be held that the words "gross premiums" include assessment receipts of the Bankers Life Company, the tax should, in no event, exceed two per cent upon the entire receipts of the company for business done in the state during any given period. As previously noted, there was imposed upon appellant a tax at the rate of two and one-half per cent upon the amount of premiums received by it for business written on the level premium plan during the year 1916, and at the rate of two per cent upon its receipts from its assessment members during the same time. Of the two and one-half per cent tax on the amount of level premium business, one-half per cent was imposed under the retaliatory clauses of the constitution and statute of 1915, *supra.* Respondent justifies the imposition of this additional one-half per cent upon the ground that the statute of the state of Iowa (sec. 1333, Code of 1913), while expressly exempting nonresident assessment associations operating in Iowa from the payment of any tax whatever upon its receipts for business done in that state, requires a tax of two and one-half per cent upon the amount of level premium business of any nonresident life insurance company operating in that jurisdiction. Appellant contends that there is no basis for such application of the retaliatory provisions, and that, in no event, should the state assess it at a greater rate than two per cent on its gross receipts from both level premium and assessment business. It alleges that pursuant to a ruling of the insurance department of the state of Iowa, nonresident former assessment associations which have amended their articles in order to write level premium insurance are only required to pay a tax of two and one-half per cent upon the gross amount of their level premiums, and

are not required to pay any tax upon their assessment receipts. The further allegation, which, in substance, is the basis of its contention in this regard, is that a California corporation similar to appellant, and doing a like business in the state of Iowa, would be taxed two and one-half per cent upon the amount of its gross level premiums, but nothing whatever upon its assessment receipts, the result being that such California corporation doing the like business in Iowa would be taxed only $8,775.83, instead of $13,016.86, the amount of the tax exacted by the state of California from appellant for its business done during the year 1916. Appellant's argument is that if the state of California treats all receipts for business done as "gross premiums," then the state confesses it had no right to segregate the "assessments" from the "premiums," and charge two per cent on assessments under the California tax, and two and one-half per cent on the premiums under the Iowa tax. In other words, it is its contention that it is the treatment of the entire business of the California company by the other state which must control, and as no claim is made that any tax imposed under the Iowa law would be greater than the normal tax provided by the laws of California, the contingency provided against by the retaliatory provision of the constitution of this state did not arise. There is merit in this contention. The aggregate amount of the tax levied by the state of California upon the gross premiums collected and received by the appellant for business done in this state during the year 1916, including assessments, computed at the established rate of two per cent is greater than any tax a similar California corporation, doing the same amount of business in the state of Iowa during that year, would have been compelled to pay. It would have paid in Iowa at the rate of two and one-half per cent upon the amount of its gross level premiums only, not including the amount of assessments received. It follows, therefore, that during the given year, 1916, no greater burden was imposed by the laws of Iowa upon a California corporation doing the same amount and kind of business in that state than was imposed upon appellant, as an Iowa corporation doing business in California. Consequently, it became unnecessary for the state to impose the additional one-half per cent upon the gross amount of level premiums collected by appellant in this state during that period in order to equalize the burden of taxation between appellant,

as a foreign corporation, and domestic corporations doing a like business.

[3] The so-called retaliatory laws are also reciprocal in nature. Their ultimate object is to secure reciprocity. (*State of Ohio* v. *Fidelity & Cas. Ins. Co.,* 49 Ohio St. 440 [34 Am. St. Rep. 573, 16 L. R. A. 611, 613, 31 N. E. 658].) The tax commission recommended their continuance in this state at the time of the submission of the constitutional amendment upon the ground that it would do away with all discrimination between domestic and foreign insurance companies, which, it said, was but fair, and, moreover, would give California companies a better chance to do business in other states under retaliatory and reciprocal laws. (Report of 1906, p. 259.) [4] But, whether regarded as reciprocal or retaliatory, in so far as they are retaliatory in their nature, and involving the comity of states, they are to be strictly construed, executed with care, and not applied to any case that does not fall plainly within the letter of the law. (*State* v. *Continental Ins. Co.,* 67 Ind. App. 536, 562 [116 N. E. 929]; *Metropolitan Life Ins. Co.* v. *Boys,* 296 Ill. 166, 170 [129 N. E. 724]; Thompson on Corporations, 2d ed., sec. 6647.) In discussing the reciprocal and retaliatory statute of Ohio, the court of that state held that the superintendent of insurance had performed his whole duty when he required companies organized out of Ohio to pay a sum sufficient to make the total equal to the amount that would be realized were the rule of taxation of the foreign state, under whose laws the foreign company was organized, applied to such foreign company's business transacted in Ohio. (*State* v. *Reinmund,* 45 Ohio St. 214, 217 [13 N. E. 30].) In Massachusetts, it was held, under a statute requiring the same taxes, fees, penalties, and obligations of foreign companies doing business in Massachusetts as were imposed on Massachusetts companies doing business in the other states, that the very plain object of the retaliatory law was to make the rate of taxation in Massachusetts no more burdensome upon foreign companies there than the like rate was upon companies of Massachusetts doing business in the foreign state. (*Metropolitan Life Ins. Co.* v. *Commonwealth,* 198 Mass. 466, 470 [84 N. E. 863]. See, also, *Phoenix Ins. Co.* v. *Welch,* 29 Kan. 480, 482.)

If, in any year, the amount of level premium business done in California by the foreign insurance company should

so far exceed the amount of assessments received by it that the total of the California tax, at the established rate of two per cent on the "gross premiums"—as that phrase is defined in this opinion—would be less than the Iowa tax at two and one-half per cent on the level premium business alone, the state of California would have the right to impose upon the foreign corporation, by way of a retaliatory tax, such additional sum as would make the total equal to the amount of the tax that would be realized were the rule of taxation in Iowa, relating to foreign insurance companies, applied to the Iowa company's business transacted in California. (*State v. Reinmund, supra.*)

The four appeals here consolidated relate to identical facts, except as to the years during which the taxes were levied and the various amounts of such taxes.

Judgment in each of the cases is reversed, and the causes are remanded to the lower court for further proceedings in keeping with the views herein expressed.

Lennon, J., Lawlor, J., Richards, J., *pro tem.*, Kerrigan, J., and Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred.