COCHRANE, Insurance Com'r of Colorado, et al. v. BANKERS' LIFE CO.

Circuit Court of Appeals, Eighth Circuit.
February 14, 1929.

No. 8022.

Jean S. Breitenstein, of Denver, Colo. (William L. Boatright and Oliver Dean, both of Denver, Colo., on the brief), for plaintiffs in error.

L. Ward Bannister, of Denver, Colo. (Samuel M. January, of Denver, Colo., and R. B. Alberson, of Des Moines, Iowa, on the brief), for defendant in error.

Before BOOTH, Circuit Judge, and POLLOCK and DEWEY, District Judges.

DEWEY, District Judge. This is an action originally brought by the Bankers' Life Company, defendant in error, to recover from the state of Colorado certain taxes which were paid under protest, and involves the construction of certain Colorado and Iowa statutes.

To an opinion of this court filed November 2, 1928, affirming the action of the District Court in permitting a recovery of the taxes so paid under protest, the plaintiff in error has filed a petition for rehearing, calling the court's attention to an error in the statement of certain facts made by the writer of the opinion.

The principles involved are the same, but accuracy of a statement of the facts requires that the former opinion be and the same is hereby withdrawn, and the following opinion substituted therefor:

The action is brought against the insurance commissioner and treasurer of the state of Colorado, and sets forth that the Bankers' Life Company is an Iowa corporation authorized and qualified to carry on the business of life insurance in Colorado; that the company was incorporated in 1887 under an Iowa statute as an assessment life insurance association, and until October, 1911, transacted business in Iowa and Colorado as an assessment association; that in 1911 the association amended its articles of incorporation, so as to permit it "to transform this corporation into a legal reserve or level premium insurance company," under the name of Bankers' Life Company, and with the provision in the articles of incorporation that it "shall be a continuation of the original corporation and retain all of its original rights, powers, privileges, and franchises so far as may be necessary to carry out all its contracts heretofore made with its members including the issuance of certificates upon examinations made at the time these articles become in force as such association, and this amendment shall not be construed to affect existing suits, rights or contracts; and these articles are and shall be construed as a substitute for the original articles except in so far as the rights of existing members are concerned."

Since 1911 the company has engaged in life insurance business in Colorado under both the assessment and level premium plan. During the years 1921 to 1925, inclusive, the assessment premiums collected by the company in the state of Colorado amounted to $312,750.74, the level premiums amounted to $1,542,043.06, making a total of $1,854,793.80. The normal tax on insurance companies under the Colorado law required a payment of 2 per cent. as taxes on all insurance premiums received by an insurance company each year.

The state of Colorado has a retaliatory statute (C. L. § 2550) as follows:

"Whenever, by the laws of any other state or country, any taxes, fines, penalties, licenses or fees in addition to or in excess of those imposed by the laws of this state upon foreign insurance companies and their agents doing business in this state, are imposed on insurance companies of this state and their agents doing business in such other state or country, or whenever any conditions precedent to the right to do business in such other state or country are imposed by the laws thereof beyond those imposed upon such foreign companies by the laws of this state, the same taxes, fines, penalties, licenses, fees and conditions precedent shall be imposed upon every similar insurance company of such other state or country and their agents doing or applying to do business in this state, so long as such foreign laws remain in force; and upon the failure of any such foreign company to comply therewith, the commissioner of insurance of this state shall revoke its certificate or license to do business in this state, or shall refuse to grant such license or certificate in the first instance."

The laws of Iowa impose a premium tax of 2½ per cent. on foreign companies, but exempts, it is claimed, companies such as the company of the defendant in error, so far as the assessment business is concerned.

The statute (section 1333 of the Iowa Code of 1897), so far as pertinent, provides:

"Every insurance company incorporated under the laws of any state of the United States other than the state of Iowa, not including associations operating under the provisions of chapter seven, title nine of this Code, or fraternal beneficiary associations doing business in the United States, shall, at the time of making the annual statements as required by law, pay into the state treasury

920

as taxes two and one-half per cent. of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year."

"Chapter seven, title nine of the Code," referred to in the above quotation, is the law under which the plaintiff company was originally incorporated, and refers to and defines insurance associations doing business under an assessment plan.

Iowa has two retaliatory laws. Section 1736 of the Iowa Code of 1897 is as follows:

"When, by the laws of any other state, any taxes, fines, penalties, licenses, fees, deposits of money, securities or other obligations or prohibitions are imposed, or would be imposed, on insurance companies of this state doing or that might seek to do business in such other state, or upon their agents therein, so long as such laws continue in force the same obligations and prohibitions of whatever kind shall be imposed upon all insurance companies of such other state doing business in this state or upon their agents here."

Section 1810 of the Iowa Code of 1897 further provides that:

"If by the laws of any state, or the rulings or decisions of the appropriate officers thereof, any burden, obligation, requirement, disqualification or disability is put upon any company or association of any class organized in this state affecting its freedom to do business in that state, then the same or like burden, obligations, requirement, disqualification or disability shall be put upon every such company or association of the same class from that state doing or seeking to do business in this state; and the [commissioner of insurance] shall enforce the provisions of this section, and in doing so may refuse to revoke the certificate of such company or association of such other state; and it shall be unlawful for the [commissioner of insurance] to impose upon companies or associations organized under chapter seven of this title any rules or regulations, requirements or limitations, that shall not be imposed with equal force upon like companies or associations from other states doing a like business in this state."

Under the foregoing statutes the commissioner of insurance of the state of Colorado claims that the company owes the state of Colorado 2 per cent. on all the premiums (level and assessment) received by it during the years under investigation, being the normal tax of Colorado, and by virtue of its re-

taliatory law an additional one-half of 1 per cent. on all level premiums received.

The company admits the 2 per cent. indebtedness, but claims that, if the commissioner is to invoke the retaliatory law of Colorado and increase the tax on the level premiums to 2½ per cent., being the rate imposed on level premiums by the laws of Iowa, the commissioner should deduct from the one-half of 1 per cent. increase on the level premiums a sum equal to 2 per cent. on the assessment premiums, which the laws of Iowa do not tax, as even after such a decrease the state of Colorado would still be receiving a greater sum or amount than a tax of 2 per cent. on the total premiums received.

An accounting between the respective parties showing the amounts received and tax actually paid, and the amount in dispute is substantially as follows:

| | |
|---|---|
| Total level premiums received during the years 1901–1925 | $1,542,043 06 |
| Total assessment premiums received during the years 1901–1925 | 312,750 74 |
| Total all premiums received during the years 1901–1925 | 1,854,793 80 |
| Two per cent. paid on $1,854,793.80 | 37,095 87 |
| Insurance commissioner wants to add on level premiums under Colorado retaliatory statute one-half per cent. on $1,542,043.06, or | 7,710 21 |
| Company wants to deduct therefrom permitted by the Iowa statute, 2 per cent. on $312,750.74, or | 6,255 01 |
| Excess which company has voluntarily paid under retaliatory statute | 1,455 20 |

And it is this $6,255.01 which the company paid under protest, and $390.10 interest, making $6,645.11, which the District Court ordered repaid, as having been unlawfully demanded by the insurance commissioner and paid under protest by the Bankers' Life Company.

One of the contentions of the plaintiff in error, referred to herein as the commissioner, is that the Bankers' Life Company was organized in 1911 as a level premium company and is not entitled to claim as such level premium company that the laws of Iowa do not apply to premiums received by it on its assessment business.

This contention is based upon the wording of that part of the Iowa statute which says, "not including associations operating under the provision of chapter seven title nine of the Code"; the argument being that "chapter seven title nine of the Code" pertains solely to assessment companies, and that the Bankers' Life Company is no longer an assessment company.

In one sense it is true that the company is not operating under the provisions of "chapter seven title nine of the Code" of Iowa, but it is operating in part as an assess-

ment association—that is, so far as the assessment business is concerned—and it is doing this under its articles of incorporation, which evidently have met with the approval of the state authorities of Iowa.

We must keep in mind that we are discussing a question of taxation, and that it is a fundamental rule that any uncertainty or ambiguity in the taxing statute is always resolved in favor of the taxpayer. "Primarily in this connection it is necessary to keep in view a cardinal principle, to be applied generally to the interpretation of legislation whereby the government seeks to impose a duty or burden upon the property or rights of the citizen in the nature of taxation, and more especially applicable to statutes such as this, seeking to impose a burden of a special or unusual character, and that is that, in all cases of doubt or ambiguity arising on the terms of such a statute, every intendment is to be indulged against the taxing power." Lynch, Collector, v. Union Trust Co. (C. C. A.) 164 F. 161.

Plaintiffs in error say that to permit an exemption of a company operating primarily as a level premium company on its taxes as an assessment company would be a discrimination and unfair to a level premium company.

The fairness of the provisions as to exemptions by the Iowa statute should hardly be raised by the commissioner in this case. By the Colorado retaliatory statute he is already getting more money than a Colorado company would pay while doing the same amount of business in the state of Colorado, and also is receiving at least as much as a similar Colorado insurance corporation would be required to pay in the state of Iowa.

Plaintiffs in error are entirely too narrow in their viewpoint. The intent of the Legislature of Iowa was to exempt assessments, as distinguished from level premiums. The reason for this was evidently not to tax policy holders in assessment associations, as distinguished from taxation on capital in a level premium company.

The Bankers' Life Company operated as an assessment association for many years, and in changing to a level premium company necessarily must continue its contracts and business for a time partly as an assessment company. Its articles of incorporation so provided, and in so operating it would be unfair, if we are to follow the commissioner's argument, to require it to take on a burden in taxation not intended by the Legislature.

The laws of Colorado control as to the taxation of foreign insurance companies doing business in Colorado, and not the laws of Iowa. The laws of Colorado provide, first, that the company pay 2 per cent. on all premiums received, and this the company has done.

It may be conceded that, to justify the imposition of a retaliatory statute by a state, it is not necessary that there be a domestic company of that state doing business in the state against which the retaliation is made. Union Central Life Ins. Co. v. Durfee, 164 Ill. 186, 194, 45 N. E. 441; Germania Ins. Co. v. Swigert, 128 Ill. 237, 21 N. E. 530, 4 L. R. A. 473; State ex rel. v. Fidelity & Casualty Co., 77 Iowa, 648, 652, 42 N. W. 509.

Considering, then, that the same amount should be paid by the Bankers' Life Company as a similar Colorado company would pay in Iowa, we find that the Colorado company would pay 2½ per cent. on its level premiums collected and nothing on its assessment premiums.

No law of Iowa imposes a 2 per cent., or any other tax, upon the assessment payments. The Bankers' Life Company in Iowa does not pay 2 per cent. on the assessment payments received by it in Iowa, and the commissioner of the state has ruled that an insurance company such as the Bankers' Life Company, doing a dual business, both as an assessment company and as a level premium company, does not have to pay taxes on the assessment payments of its members.

The commissioner insists that the ruling of the Iowa insurance commissioner, that such a company is exempt from taxation on its assessments in Iowa, is immaterial. However, the courts have held otherwise. 25 R. C. L., § 274; Jacobs v. Pritchard, 223 U. S. 201, 213, 214, 32 S. Ct. 289, 56 L. Ed. 405; Pennoyer v. McConnaughty, 140 U. S. 23, 11 S. Ct. 699, 35 L. Ed. 363; U. S. v. Pugh, 99 U. S. 265, 269, 25 L. Ed. 322; Brown v. U. S., 113 U. S. 568, 5 S. Ct. 648, 28 L. Ed. 1079; U. S. v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; U. S. v. Falk, 204 U. S. 143, 152, 27 S. Ct. 191, 51 L. Ed. 411; Komada v. U. S., 215 U. S. 392, 396, 30 S. Ct. 136, 54 L. Ed. 249; Edwards v. Ry. Co. (C. C. A.) 264 F. 610; Mayes v. Paul Jones & Co. (C. C. A.) 270 F. 121; Trumbull Steel Co. v. Routzahn (D. C.) 292 F. 1009; Kepner v. U. S., 195 U. S. 100, 24 S. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655; U. S. v. Hermanos, 209 U. S. 337, 28 S. Ct. 532, 52 L. Ed. 821.

In Pennoyer v. McConnaughty, 140 U. S. 23, 11 S. Ct. 706 (35 L. Ed. 363), supra, the Court said:

922

"The principle that the contemporaneous construction of a statute by the executive officers of the government, whose duty it is to execute it, is entitled to great respect, and should ordinarily control the construction of the statute by the courts, is so firmly imbedded in our jurisprudence that no authorities need be cited to support it. On the faith of a construction thus adopted, rights of property grow up which ought not to be ruthlessly swept aside, unless some great public measure, benefit or right is involved, or unless the construction itself is manifestly incorrect."

■■ There is an additional reason why the contentions of the commissioner cannot be sustained. Retaliatory statutes, it has been held with conclusive reasonings, are intended to level the amount of taxes, and not, as a penal statute, to require the payment of an equal rate of taxation as a penalty.

A 2½ per cent. tax on the level premiums collected in Colorado amounts to $38,551.05, while a 2 per cent. tax on the total premiums collected amounts to $37,095.87. It will thus be seen that the amount of taxes collected by the commissioner exceeds by $1,455.20 the normal Colorado tax on insurance companies. In demanding 2½ per cent. on the level premiums and 2 per cent. on the assessment premiums, the commissioner retaliates beyond the point of equalization, and therefore beyond the authority given him by the Colorado retaliatory statute.

The idea that it was the intention of the Legislature of the state of Colorado to level the amount of taxes paid is plainly shown by the context of the Colorado retaliatory statute. It does not say that a foreign insurance company should pay the same rate of taxes, but where taxes, fines, penalties, licenses, or fees are imposed in excess of those imposed by the state of Colorado on a Colorado company in some other state, then that the company in the state in which such imposition is made doing business in Colorado, should pay the same taxes, fines, penalties, licenses, fees, etc.

In considering the several items upon which a like payment could be imposed on a foreign company, we find that only taxes have a rate of payment. The other items must from their nature be paid in the same amount. The imposition of payment as to the other items being as to an amount rather than as to a similar rate, shows that the legislative intent must have been to fix the amount of the taxes that were to be equalized rather than the rate. This also is fair, and this reasoning is sustained by the following authorities: State ex rel. New England, etc., v. Reinmund, 45 Ohio St. 214, 13 N. E. 30;

State ex rel. John Hancock, etc., Co. v. Reinmund, 45 Ohio St. 214, 13 N. E. 30; State ex rel. Berkshire Life Ins. Co. v. Reinmund, 45 Ohio St. 214, 13 N. E. 30; Metropolitan Life Ins. Co. v. Commonwealth, 198 Mass. 466, 84 N. E. 863; State ex rel. State Auditor v. Continental Ins. Co., 67 Ind. App. 536, 116 N. E. 929; State v. American Ins. Co., 79 Ind. App. 88, 137 N. E. 338; Bankers' Life Co. v. Richardson, 192 Cal. 113, 218 P. 586.

As stated in the California case, supra, which is practically on "all fours" with the case at bar, as it involves the same Iowa statute and company and similar normal and retaliatory tax laws: "So-called retaliatory laws are also reciprocal in nature. Their ultimate object is to secure reciprocity. * * * But, whether regarded as reciprocal or retaliatory, in so far as they are retaliatory in their nature, and involving the comity of states, they are to be strictly construed, executed with care, and not applied to any case that does not fall plainly within the letter of the law" (cases cited).

The California case also says:

"The aggregate amount of the tax levied by the state of California upon the gross premiums collected and received by the appellant for business done in this state during the year 1916, including assessments, computed at the established rate of 2 per cent. is greater than any tax a similar California corporation, doing the same amount of business in the state of Iowa during that year, would have been compelled to pay. It would have paid in Iowa at the rate of 2½ per cent. upon the amount of its gross level premiums only, not including the amount of assessments received. It follows, therefore, that during the given year 1916 no greater burden was imposed by the laws of Iowa upon a California corporation doing the same amount and kind of business in that state than was imposed upon appellant, as an Iowa corporation doing business in California. Consequently it became unnecessary for the state to impose the additional one-half per cent. upon the gross amount of level premiums collected by appellant in this state during that period in order to equalize the burden of taxation between appellant, as a foreign corporation, and domestic corporations doing a like business."

It must follow that the action of the lower court in entering a judgment against the commissioner for $6,645.11 should be and the same is affirmed, and the petition of the plaintiff in error for a rehearing is denied.

Affirmed.